Adam J. Levitt
Daniel R. Ferri
Elijah G. Savage
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com
esavage@dicellolevitt.com

Jarett Sena
**DICELLO LEVITT LLP**
485 Lexington Avenue, Tenth Floor
New York, New York 10017
Telephone: (646) 933-1000
jsena@dicellolevitt.com

*Counsel for Plaintiff Carol Czakoczi*
*and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAROL CZAKOCZI individually, and as a representative of a Class of Participants and Beneficiaries of the UBS 401(k) Plan, <br><br> Plaintiff, <br><br> v. <br><br> UBS AG, UNDER 29 U.S.C. § 1132(a)(2) <br><br> and <br><br> DOE 1, <br><br> Defendants. | Civil Action No. 2:25-cv-6138 <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Carol Czakoczi, individually and on behalf of all other similarly situated participants in and beneficiaries of the UBS 401(k) Plan (the "Class"), by their undersigned counsel, bring this class action complaint against the defendants listed herein:

1

## INTRODUCTION

1.      Each year, Defendants UBS AG and DOE 1, as plan fiduciaries, must decide between using certain assets of the UBS 401(k) Plan to either cover plan participants' costs or to defray UBS AG's obligations to the plan. Every year, since 2020, Defendants have chosen to defray UBS AG's obligations, to the detriment of the plan, its participants, and their beneficiaries. These actions were unlawful.

2.      Under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1193c, the assets of a covered plan "shall be held for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan," *id*. § 1103(c)(1). Plan assets "shall never inure to the benefit of any employer." *Id*.

3.       In managing a plan and its assets, plan fiduciaries must act "solely in the interest of participants." *Id*. § 1104(a)(1). And they must do so "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id*. § 1104(a)(1)(B).

4.      These fiduciary duties of loyalty and prudence govern the conduct of plan fiduciaries and impose on them "the highest duty known to the law." *Donovan v. Beirwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

5.      In addition to these broad duties, ERISA prohibits plan fiduciaries from engaging in certain specific actions. Specifically, fiduciaries may not cause the plan to engage in any transaction prohibited by 29 U.S.C. § 1106(a)(1), nor may they "deal with the assets of the plan in [their] own interest." 29 U.S.C. § 1106(a)–(b).

2

6.    UBS AG ("UBS" or the "Company") and DOE 1 (the "Plan Administrator") (collectively "Defendants") violated ERISA by 1) breaching their fiduciary duties of loyalty and prudence, 2) using plan assets for the benefit of participant employer UBS, 3) dealing with the assets of the plan in its own interest, and 4) causing the plan to engage in prohibited transactions.

7.    In addition to these violations, UBS also violated ERISA by failing to monitor the Plan Administrator to ensure that it was performing its delegated fiduciary obligation.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

9.    This Court has personal jurisdiction over Defendants because the UBS 401(k) Plan is administered in this District, they transact business in this District, reside in this District, and have significant contacts with this District.

10.    Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) because some or all of the violations of ERISA described in this complaint occurred in this District and Defendants may be found in this District.

11.    In conformity with 29 U.S.C. § 1132(h), Plaintiff served the original Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

12.    The UBS 401(k) Plan (the "Plan") is a Section 401(k) "defined contribution" employee pension benefit plan under 29 U.S.C. §§ 1002(2)(A) and 1002(34). The Plan is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1003(a).

13.    Plaintiff Carol Czakoczi is a resident of the State of Texas and currently resides in Texarkana.

14.    During the Class Period, defined in ¶47, Plaintiff Carol Czakoczi was a participant in the Plan, as defined under 29 U.S.C. § 1002(7).

15.    Plaintiff Carol Czakoczi joined the Plan in 2018 and is a current Participant of the Plan.

16.    Since becoming a Plan participant in 2018, Plaintiff's individual account has been charged with a share of the Plan's administrative expenses. These charges have reduced the monetary value of Plaintiff's individual account.

17.    Plaintiff has Article III standing as a Plan participant to bring this action on behalf of the Plan because she suffered actual injuries to her own Plan account. Specifically, Plaintiff's account was charged for the Plan's administrative expenses that otherwise would have been paid for by forfeited contributions had Defendants not violated ERISA. This injury is fairly traceable to Defendants' violations of ERISA. The harm is likely to be redressed by a favorable judgment providing equitable relief to Plaintiff and the Class.

18.    Having established Article III standing, Plaintiff may seek recovery under 29 U.S.C. § 1132(a)(2) on behalf of the Plan and for relief that sweeps beyond her own injuries.

19.    Defendant UBS AG is a multinational investment bank and financial services company organized under the laws of Switzerland and headquartered in Zurich, Switzerland.

20.    UBS, as Plan Sponsor, acted through its officers, including through DOE 1, to perform Plan-related fiduciary functions in the course and scope of their business. UBS had a duty to appoint and oversee those appointees, and accordingly had a concomitant fiduciary duty to

monitor, supervise, and remove those appointees under appropriate circumstances. For these reasons, UBS is a fiduciary of the Plan, within the meaning of 29 U.S.C. § 1002(21)(A).

21.    The Defendant sued by the fictitious name DOE 1, is the Head of Benefits Americas Region and the Plan Administrator. As the Plan Administrator, DOE 1 is a Plan fiduciary with day-to-day administration and operation of the Plan under 29 U.S.C. § 1002(21)(A). Plan Administrator has exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly fulfill such responsibilities. For these reasons, the Plan Administrator is a fiduciary of the Plan, within the meaning of 29 U.S.C. § 1002(21)(A).

## FACTUAL ALLEGATIONS

22.    As required by 29 U.S.C. § 1102(a)(1), the Plan is maintained under a written document. At all times relevant to the allegations in this Complaint the governing Plan document was restated on January 1, 2020

23.    In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund.

24.    The Plan is an individual account, defined contribution retirement plan, which "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

25.    The Plan is funded by a combination of Company matching contributions and wage withholdings by Plan participants that are deposited into the Plan's trust fund. When deposited into

the Plan's trust fund, all participant contributions and Company matching contributions become assets of the Plan.

26.    The Plan provides that UBS, in its capacity as Plan sponsor, will make matching contributions to the Plan equal to 100% of the participants' contributions, up to 6% of compensation.

27.    Participants in the Plan are immediately vested in their own contributions, along with any income or losses on those balances.

28.    Participants become vested in the Company's matching contributions, plus any income or losses on those balances, upon completion of three years of service.

29.    A participant who is not vested in the Company's matching contributions on the date their employment is terminated forfeits the balance of unvested Company contributions in his or her individual account. Defendants exercise discretionary authority and control over how these forfeited Plan assets (or "forfeitures") are thereafter reallocated.

30.    The Plan requires Defendants to decide among options for reallocating the Plan's forfeitures. Specifically, it provides that "forfeitures shall be applied to either reduce succeeding Company Contributions by the Employers, or pay Plan expenses, as determined by the Plan Administrator in its sole discretion."

31.    Whether one of these options or the other is in the best interests of participants depends on the particular facts and circumstances present at the time Defendants decide how the Plan's forfeitures are to be reallocated.

32.     Using the forfeitures "to reduce" UBS's contribution obligations is always in the best interest of UBS because that option allows UBS to contribute less new money to the plan, decreasing the amount it would otherwise be obligated to contribute to the Plan.

33.     If there is a risk that UBS may be financially unable to satisfy its contribution obligations, this option might also be in the best interests of participant because it would provide participants with employer contributions that they might not otherwise receive.

34.     For each year since 2020, UBS had more than $5 billion in net profit and was under no risk of defaulting on its contribution obligations to the Plan. Nonetheless, throughout that period, Defendants consistently decided how to allocate forfeiture based solely on their own self-interests without considering the interests of the Plan and its participants.

35.     Absent a risk that UBS would be unable to satisfy its contribution obligations, UBS's use of the forfeitures to reduce employer contributions is not in the best interest of participants, as participants then pay for *all* of the Plan's expenses out of their individual accounts, leaving participants with less assets for distribution or investment.

36.     Conversely, absent a risk that UBS would be unable to meet its contribution obligations, Defendant's allocation of forfeitures to "pay Plan expenses" is in the participants' best interest, as it reduces or eliminates amounts otherwise charged to participant's accounts to cover these expenses, leaving participants with more assets for distribution or investment.

37.     In deciding how to allocate forfeitures, Defendants are presented with a conflict of interest.

38.     Since 2020 Defendants have never used any forfeited funds to pay Plan expenses. This despite ERISA requiring Defendants to defray the Plan's expenses, *see* 29 U.S.C. §

1104(a)(1)(A)(ii), and the Plan permitting Defendants to use the forfeited funds to pay Plan expenses.

39.    Instead, since 2020 Defendants have consistently chosen to use the forfeitures for the benefit of UBS and to the detriment of the Plan and its participants. Because Defendants chose to allocate forfeitures to UBS's benefit, participant accounts were each charged with an allocation of the expenses paid by the Plan, which each participant shares equally.

40.    The administrative expenses paid by the plan each year since 2020 have been as follows:[1]

| Year | Amount of Administrative Expenses Paid |
|------|----------------------------------------|
| 2020 | $8,524,756 |
| 2021 | $11,041,705 |
| 2022 | $9,038,142 |
| 2023 | $6,699,386 |
| **Total** | **$35,303,989** |

41.    Since 2020 all participant accounts, including Plaintiff's account, have been charged with administrative expenses.

42.    The deduction of administrative expenses from the participants' accounts reduced the funds available to participants for distribution and/or investing and deprived the Plan of funds that it otherwise would have earned on the amounts deducted. Therefore, the participants' account balances and the Plan's total assets would have been greater had Defendants elected to use forfeitures to pay Plan expenses.

---

[1] Information for 2024 is not currently available to Plaintiff but could be obtained through discovery.

8

43.    For each year since 2020, UBS has had sufficient cash and equivalents on hand to satisfy its contribution obligations to the Plan. Nevertheless, throughout that period, Defendants consistently decided to allocate forfeitures solely in their own self-interest and failed to consider the interests of the Plan and its participants.

44.    Rather than defray any part of the Plan's administrative expenses charged to participants, since 2020 Defendants utilized forfeited funds to reduce UBS's matching contributions in the amounts that follow:

| Year | Amount Contributions Were Reduced by Forfeitures |
|------|-------------------------------------------------|
| 2020 | $7,746,436 |
| 2021 | $13,331,846 |
| 2022 | $12,439,734 |
| 2023 | $10,336,612 |
| **Total** | **$43,854,628** |

45.    Moreover, since 2020, rather than defray any part of the Plan's administrative expenses charged to participants, Defendants failed to exercise their discretion over the Plan's forfeitures in a timely fashion, leaving unallocated forfeitures at the year's end in the amounts that follow:

| Year | Amount of Unallocated Forfeitures at the Years End |
|------|---------------------------------------------------|
| 2020 | $8,080,564 |
| 2021 | $2,651,261 |
| 2022 | $2,634,650 |
| 2023 | $2,612,156 |

## CLASS ACTION ALLEGATIONS

46.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

47.     In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. § 1132(a)(2), Plaintiff seeks to certify this action as a class action on behalf of all Plan participants and beneficiaries. Plaintiff seeks to certify, and to be appointed as representative of, the following class:

> Class: All participants and beneficiaries of the UBS 401(k) Plan (excluding Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning six years prior to the date of filing and running through the date of judgment ("Class Period").

48.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**. The class contains over 30,000 members and is so large that joinder of all its members is impracticable.

49.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**. Numerous common questions of law and fact exist as to Plaintiff and the other Class members because Defendants owed fiduciary duties to the Plan and took the actions and omissions alleged as to the Plan and not as to any individual participant. These common questions predominate over individualized issues. Common questions of law and fact include but are not limited to the following:

a.   Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

b.   Whether Defendants breached their fiduciary duties of prudence and loyalty to the Plan;

c.   Whether Defendants caused the Plan to engage in prohibited transactions;

d.   Whether the Defendants allowed plan assets to inure to the benefit of UBS;

e.   Whether Defendants dealt with the assets of the plan in its own interest;

10

f.  What are the losses to the Plan resulting from each of the ERISA violations described in b–e; and

g.  What Plan-wide equitable and other relief should the Court impose in light of Defendants' breach of duty.

50.  **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members because (a) Plaintiff was a participant in the Plan during the Class Period, and (b) Defendants' misconduct harmed all participants in the Plan.

51.  **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will adequately represent the Class because she (a) is a participant in the Plan during the Class Period, (b) has no interest that conflicts with the Class, (c) is committed to the vigorous representation of the Class, and (d) has engaged experienced and competent lawyers to represent the Class.

52.  **Risk of Inconsistent/Dispositive Adjudications – Federal Rule of Civil Procedure 23(b)(1).** Certification under Federal Rule of Civil Procedure 23(b)(1) is appropriate, because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (a) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), or (b) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

53.      **Declaratory and Injunctive Relief - Federal Rule of Civil Procedure 23(b)(2)**.

Certification under Federal Rule of Civil Procedure 23(b)(2) is appropriate because, as alleged in

this complaint, Defendants have acted or refused to act on grounds that apply generally to the

Class, so that final injunctive or corresponding declaratory relief is appropriate respecting the Class

as a whole.

54.      **Damages – Federal Rule of Civil Procedure 23(b)(3).** Certification under Federal

Rule of Civil Procedure 23(b)(3) is appropriate because (a) as discussed above, common issues

predominate individual issues, and (b) a class action is superior to any other available means for

the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be

encountered in the management of this class action. Specifically, the damages or other financial

detriment suffered by Plaintiff and each of the other Class Members are small compared to the

burden and expense that would be required to individually litigate their claims against Defendants,

rendering it impracticable for Class Members to individually seek redress for Defendants'

wrongful conduct. Moreover, even if Class Members could afford individual litigation, the court

system could not. Individualized litigation creates the potential for inconsistent or contradictory

judgments and increases the delay and expense to all parties and the court system. By contrast, the

class action device presents far fewer management difficulties, and provides the benefit of single

adjudication, economy of scale, and comprehensive supervision by a single court.

55.      Plaintiff's attorneys are experienced in complex ERISA and class litigation and will

adequately represent the Class.

56.     The claims brought by Plaintiff arise from fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts, and thus internal exhaustion of these claims is not required.

## CLAIMS

### FIRST CLAIM FOR RELIEF
**Breach of ERISA Duty of Loyalty**
**(29 U.S.C. § 1104(a)(1)(A))**

57.     Plaintiff realleges and incorporates herein by reference each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

58.     Plaintiff asserts this claim on behalf of the Class.

59.     Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

60.     Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendants were required to discharge their duties to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

61.     Since 2018, Defendants have repeatedly breached their duty of loyalty with respect to their control and management of the Plan's assets by invariably choosing to use the Plan's forfeited funds for the benefit of the Company rather than solely in the interest of the participants and their beneficiaries.

62.     Instead of using forfeited funds in the interest of participants by reducing or eliminating the administrative expenses charged to their individual accounts, Defendants chose to use these Plan assets for the purpose of reducing the company's own contributions to the Plan, saving the Company millions of dollars each year at the Plan's and its participants' expense.

13

63.     As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for the Company's obligated contributions, and the lost investment returns on those assets.

64.     Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendants' breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

65.     Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

## SECOND CLAIM FOR RELIEF
### Breach of ERISA Duty of Prudence
### (29 U.S.C. § 1104(a)(1)(B))

66.     Plaintiff realleges and incorporates herein by reference each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

67.     Plaintiff asserts this claim on behalf of the Class.

68.     Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

69.     Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendants were required to discharge their duties with respect to the Plan "with the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

70.    Since 2018, Defendants have repeatedly breached their duty of prudence with respect to their control and management of the Plan's assets.

71.    In deciding how to allocate forfeitures, Defendants utilized an imprudent and flawed process. Despite the conflict of interest presented by this decision, Defendants failed to undertake any reasoned and impartial decision-making process to determine which use of the Plan's forfeited funds was in the best interest of the Plan's participants. Instead, without any consideration of what was in the interest of the Plan's participants and their beneficiaries, Defendants invariably chose to use the Plan's forfeited funds for the benefit of the Company.

72.    A prudent fiduciary would have established a process for determining, after considering all relevant factors, which use of plan assets better served the Plan's participants and their beneficiaries. Defendants failed to do so.

73.    As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for the Company's obligated contributions, and the lost investment returns on those assets.

74.    Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendants' breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons,

each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

75.    Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

### THIRD CLAIM FOR RELIEF
**Breach of ERISA's Anti-Inurement Provision**
**(29 U.S.C. § 1103(c)(1))**

76.    Plaintiff realleges and incorporates herein by reference each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

77.    Plaintiff asserts this claim on behalf of the Class.

78.    Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

79.    The Company's contributions that a participant forfeits because that participant terminated their employment prior to those contributions fully vesting are assets of the Plan.

80.    Defendants caused the assets of the plan to inure to the benefit of the Company in violation of 29 U.S.C. 1103(c)(1) by deciding to use these Plan assets as a substitute for the Company's own obligated contributions to the Plan for the purpose of saving the Company millions of dollars in contribution expenses.

81.    As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer

16

losses in the amount of the Plan assets that were substituted for obligated Company contributions, and the lost investment returns on those assets.

82.     Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendants' breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

83.     Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

**FOURTH CLAIM FOR RELIEF**
**Prohibited Transactions**
**(29 U.S.C. § 1106(a)(1))**

84.     Plaintiff realleges and incorporates herein by reference each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

85.     Plaintiff asserts this claim on behalf of the Class

86.     Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

87.     Pursuant to 29 U.S.C. § 1106(a)(1), "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . exchange . . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan."

88.     Because UBS and the Plan Administrator are fiduciaries of the Plan and UBS is the employer of Plan participants, both are parties in interest under 29 U.S.C. § 1002(14).

89.     By choosing to use the Plan's forfeited funds, which are property of the Plan, to defray UBS's obligated contributions to the Plan, Defendants caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan property to UBS, and/or caused the use of Plan assets by or for the benefit of UBS.

90.     As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for obligated Company contributions, and the lost investment returns on those assets.

91.     Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendants' breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

92.     Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

18

## FIFTH CLAIM FOR RELIEF
### Dealing With Plan Assets
### (29 U.S.C. § 1106(b)(1))

93.     Plaintiff realleges and incorporate herein by reference each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

94.     Plaintiff asserts this claim on behalf of the Class.

95.     Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

96.     Pursuant to 29 U.S.C. § 1106(b), "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

97.     By utilizing forfeited Plan assets as a substitute for obligated Company contributions to the Plan for the purpose of saving the Company millions of dollars, Defendants dealt with the assets of the Plan in their own interest and for their own account.

98.     As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for obligated Company contributions, and the lost investment returns on those assets.

99.     Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendants' breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons,

each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

100.    Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

## SIXTH CLAIM FOR RELIEF
### Failure to Monitor Other Fiduciaries

101.    Plaintiff realleges and incorporates herein by reference each allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

102.    Plaintiff asserts this claim on behalf of the Class.

103.    This claim is asserted against Defendant UBS only.

104.    Defendant UBS is a fiduciary of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

105.    Defendant UBS had the authority to appoint, oversee, and remove the Plan Administrator. Defendant UBS knew or should have known that this fiduciary had critical responsibilities for the Plan.

106.    In light of this authority, Defendant UBS had a duty to monitor the Plan Administrator to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan if these individuals were not fulfilling those duties.

107.    Defendant UBS breached its fiduciary monitoring standard with respect to the Plan Administrator by, among other things, (a) failing to monitor the Plan Administrator's management and use of forfeited funds in the Plan, and (b) by failing to take steps to ensure that the Plan

20

Administrator was discharging its duties with respect to Plan assets for the sole benefit of Plan participants and beneficiaries.

108.    As a direct result of UBS's breach of its fiduciary duty to monitor, the Plan suffered losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter judgement against Defendants on all respective claims against them and requests that the Court award the following relief:

A. A determination that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representatives, and appointing Plaintiff's attorneys as Class Counsel;

B. A Declaration that the Defendants are Plan fiduciaries and have breached their fiduciary duties under ERISA as described in Counts One and Two;

C. A Declaration that the Defendants engaged in unlawful conduct as described in Counts Three through Five;

D. A Declaration that the Defendant UBS breached its duty to monitor other fiduciaries as described in Count Six;

E. An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of ERISA, including restoring to the Plan all losses, restoring to the Plan all profits Defendants made through use of the Plan's assets, and restoring to the Plan all profits which its participants would have made if the defendants had fulfilled their obligations under ERISA;

21

F. An Order requiring Defendants to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(2) in the form of an accounting for profits, imposition of constructive trust, or surcharge against Defendants as necessary to effectuate relief, and to prevent Defendants' unjust enrichment;

G. An Order enjoining Defendants from any further violation of their ERISA fiduciary responsibilities, obligations, and duties relating to the reallocation of the Plans forfeited assets;

H. Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of plan fiduciaries deemed to have breached their fiduciary duties;

I. An award of pre-judgment interest;

J. An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

K. Such other and further relief as the Court deems equitable and just.

DATED:  May 29, 2025                          Respectfully submitted,

                                         */s/ Jarett Sena*
                                         Jarett Sena
                                         **DICELLO LEVITT LLP**
                                         485 Lexington Avenue, Tenth Floor
                                         New York, New York 10017
                                         Telephone: (646) 933-1000
                                         jsena@dicellolevitt.com

Adam J. Levitt
Daniel R. Ferri
Elijah G. Savage
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com
esavage@dicellolevitt.com

*Counsel for Plaintiff and the Proposed Class*