# GIBSON DUNN

Seton Hartnett O'Brien
Associate Attorney
T: +1 212.351.6259
sobrien@gibsondunn.com

August 1, 2025

Hon. Evelyn Padin
Martin Luther King Jr. Federal Building and United States Courthouse
50 Walnut Street, Room 2009
Newark, NJ 07102-3572

Re:     *Czakoczi v. UBS AG et al.,*
        Case No. 2:25-cv-06138-EP-AME

Dear Judge Padin:

We write on behalf of Defendants UBS AG and the UBS 401(k) Plan Administrator (together, "UBS") pursuant to Rule I(A) of the Court's Rules and Procedures, to request a pre-motion conference on UBS's motion to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6).

## I.      Background

Plaintiff is a participant in the UBS 401(k) Plan (the "Plan"), which is a "defined contribution" employee pension benefit plan under 29 U.S.C. §§ 1002(2)(A) and 1002(34). Compl. ¶¶ 12, 15. Plaintiff's class action Complaint challenges UBS's use of Plan "forfeitures" to offset employer contributions to Plan participant accounts.  "Forfeitures" are employer contributions made for the benefit of Plan participant accounts that do not become vested (for example, due to the participant's separation from employment and/or departure from the Plan before vesting).  The current version of the Plan provides that "forfeitures shall be applied to either reduce succeeding Company Contributions by the Employers, or pay Plan expenses, as determined by the Plan Administrator in its sole discretion." *See* Ex. A at § 7.6(a).[1]  Prior versions of the Plan simply provided that forfeitures "shall be applied to reduce succeeding Company Contributions by the Employers."  *See* Ex. B at § 7.6(a).  Nevertheless, Plaintiff claims that UBS's use of forfeitures to "reduce succeeding Company Contributions" constitutes a breach of fiduciary duty under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and violates ERISA's anti-inurement and prohibited transaction provisions.  Compl. ¶¶ 57-100.  Plaintiff also brings a derivative claim for alleged failure to monitor the Plan's fiduciaries with respect to such conduct.  *Id.* ¶¶ 101-108.

Plaintiff's barebones Complaint is replete with sweeping and conclusory allegations; it shares many of the flaws that courts across the country, including this Court, have identified in dismissing similar claims.  *See Barragan v. Honeywell Intl., Inc.*, 2024 WL 5165330 (D.N.J. Dec. 19, 2024) (Padin, J.).[2]  Here, too, Plaintiff's Complaint should be dismissed in its entirety.

---

[1] Because Plaintiff references and relies upon the underlying ERISA plans in her Complaint, and they are integral to her claims, the documents may be considered in connection with a motion to dismiss.  *See Pro. Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, 2015 WL 4387981, at *1, n.3 (D.N.J. July 15, 2015).

[2] *See also, e.g.*, *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 862-63 (N.D. Cal. 2024); *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765 (W.D. Wash. June 23, 2025); *Wright v. JPMorgan Chase & Co.*, 2025 WL 1683642 (C.D. Cal. June 13, 2025); *Madrigal v. Kaiser Found. Health Plan, Inc.*, 2025 WL 1299002 (C.D. Cal. May 2, 2025); *Sievert v. Knight-Swift Transportation Holdings, Inc.*, --- F. Supp. 3d ----, 2025 WL 1248922 (D. Ariz. Apr. 30, 2025); *Dimou v. Thermo*

**GIBSON DUNN**

August 1, 2025
Page 2

### II.     Rule 12(b)(1)

Plaintiff lacks Article III standing to bring claims challenging the Plan's terms prior to 2020. Plaintiff's allegation that "[s]ince becoming a Plan participant in 2018, Plaintiff's individual account has been charged with a share of the Plan's administrative expenses," Compl. ¶ 16, is simply false and contrary to the terms of the Plan.  Under the Plan's express terms, *active employees* pay no administrative fees; only participants who remain in the plan after leaving employment with UBS do so.  *See* Ex. A at § 10.6; Ex. B § 10.6.  Plaintiff's employment with UBS ended in 2021.  Accordingly, Plaintiff paid no administrative fees, and thus has no standing to challenge the administration of the Plan, as it existed prior to 2020.

### III.    Rule 12(b)(6)

Setting aside the question of Plaintiff's Article III standing, her Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim.  First, Plaintiff fails to plausibly state a claim for breach of fiduciary duty in Counts I and II because her theory of liability is built on bare conclusory allegations and assertions devoid of factual support.  But even if Plaintiff provided factual support for her fiduciary breach theories, those claims would fail.  As noted above, the Plan in effect prior to 2020 did not even permit forfeited funds to be used for the purpose Plaintiff prefers. Accordingly, no fiduciary breach could have arisen from declining to take an action not authorized by the Plan's terms.  *See Wright*, 2025 WL 1683642, at *4 (finding plaintiff's theory "unviable because . . . Defendants could not have used forfeited amounts to offset costs that would have been borne by participants," as the plan did not authorize it).  Put differently, because prior to 2020 Plaintiff's suggested use of forfeited amounts was foreclosed by the terms of the Plan, her complaint for that period concerns a settlor function, not a fiduciary function.  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) (plan design decisions are not challengeable as fiduciary breaches).

Plaintiff's theory of fiduciary breach liability fails more broadly under both versions of the Plan because it is inconsistent with ERISA itself, as this Court and numerous other courts have ruled in similar cases.  Recently, this Court rejected Plaintiff's broad theory that "any time a fiduciary is given the option to use forfeited amounts to either reduce employer contributions or pay administrative costs, the fiduciary must choose the latter."  *Barragan*, 2024 WL 5165330, at *4. Indeed, "[a]s pled, Plaintiff's theory would require any fiduciary to use forfeited amounts to pay administrative costs regardless of any such context or circumstances.  This broad allegation is implausible because it would improperly extend ERISA beyond its bounds and would be contrary to the settled understanding of Congress and the Treasury Department regarding defined contribution plans like the one at issue in this case."  *Hutchins*, 737 F. Supp. 851 at 862–63; *see also, e.g.*, *Wright*, 2025 WL 1683642, at *4–5 (plaintiff's theory "fails because it contravenes ERISA and decades of settled precedent").  Using forfeitures to reduce employer contributions is expressly permitted by the terms of the Plan and both current and proposed Treasury Department regulations.  *See* 26 C.F.R. § 1.401-7(a); *Use of Forfeitures in Qualified Retirement Plans*, 88 Fed. Reg. 12282-01 (proposed Feb. 27, 2023).  As such, this practice is neither imprudent nor disloyal.  *See Barragan*, 2024 WL 5165330 at *4 (agreeing that there was no breach of fiduciary duties because defendant complied with the terms of the plan and Treasury Department regulations).

---

*Fisher Sci. Inc.*, 2024 WL 4508450 (S.D. Cal. Sept. 19, 2024); *Naylor v. BAE Sys., Inc.*, 2024 WL 4112322 (E.D. Va. Sept. 5, 2024).

## GIBSON DUNN

August 1, 2025
Page 3

Plan participants also have no statutory right under ERISA to have a plan settlor pay their administrative expenses.  To the contrary, plan sponsors are entitled to decide what level of benefits they provide, how to fund them, and which plan-related costs participants will bear.  *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983); *Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 78 (3rd Cir. 1991).  Thus, as this Court and others have found, it is not a breach of fiduciary duty for an employer to decide *not* to pay plan participants' administrative fees—although, in this case, UBS *does* pay those expenses for actively employed Plan participants.  Ex. A at § 10.6; Ex. B at § 10.6.

Plaintiff also fails to state a viable claim for breach of ERISA's anti-inurement provision in Count III because the Complaint does not (and cannot) make the required threshold allegation that UBS's use of forfeitures results in removal of funds from the Plan.  Plan participants benefit from the use of forfeited funds as contributions to their accounts for their benefit as Plan participants.  *Barragan*, 2024 WL 5165330, at *6.  These funds never become general "assets of a plan" subject to use for *any* purpose; rather, they are effectively reallocated from one participant's account following forfeiture to another participant's account for the specifically authorized purpose of offsetting contribution requirements.  *Hutchins*, 737 F. Supp. 3d 851 at 864.  Plaintiff fails to allege that UBS used any forfeited assets for a purpose other than to pay funds into the accounts of Plan participants.  She therefore has not alleged a violation of ERISA's anti-inurement provision.

Further, Plaintiff fails to state an ERISA prohibited transaction claim in Counts IV and V because the use of forfeitures to offset employer contributions is not an unlawful "transaction" under ERISA sections 406(a) or 406(b).  *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996).  As a threshold matter, to satisfy either provision, Plaintiff must allege a transaction between the Plan and either a "party in interest" (section 406(a)) or a "fiduciary" (section 406(b)).  Here, however, Plaintiff alleges no transaction between the Plan and any other party.  Instead, Plaintiff alleges only that forfeitures remain in the Plan and are reallocated to participant accounts to provide benefits pursuant to the Plan's terms.  That reallocation of Plan funds is neither "prohibited" nor a "transaction."  *See Sievert*, 2025 WL 1248922, at *6 (finding that plaintiffs failed to allege a prohibited transaction because "the reallocation of Plan assets to provide benefits to employees as matching contributions is not a prohibited transaction").  Plaintiff's claim in Count V must also be dismissed as she fails to allege that UBS "deal[t] with the assets of the plan in [its] own interest or for [its] own account"; instead, the forfeited amounts in issue remain at all times in the Plan and at no point revert to the Plan sponsor's "own account."  *Barragan*, 2024 WL 5165330 at *7.

Finally, because Plaintiff failed to state a claim for breaches of the fiduciary duties of loyalty or prudence, her derivative monitoring claim in Count VI must also fail.  *See, e.g.*, *Sievert*, 2025 WL 1248922, at *6; *McWashington*, 2025 WL 1736765, at *15.  And Plaintiff's jury demand should be struck because it is well settled in the Third Circuit that ERISA claims like these are tried to the bench, not to a jury.  *Pane v. RCA Corp.*, 868 F.2d 631, 635–67 (3d Cir. 1989); *see also Berkelhammer v. ADP TotalSource Grp., Inc.*, 2024 WL 5220126, at *2–3 (D.N.J. Dec. 26, 2024).

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Seton Hartnett O'Brien*
Seton Hartnett O'Brien